[Cite as *State v. Watkins*, 2013-Ohio-4222.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :          APPEAL NO. C-120567
                                              TRIAL NO.    B-1105308
    Plaintiff-Appellee,         :

      vs.                      :          *O P I N I O N.*

ANTHONY WATKINS,                  :

    Defendant-Appellant.        :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  September 27, 2013


*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*William F. Oswall, Jr.,* for Defendant-Appellant.


Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM**, **Judge.**

{¶1}    Defendant-appellant Anthony Watkins appeals the imposition of multiple sentences upon him following his pleas of no contest to a single count of aggravated-vehicular homicide and to two counts of aggravated-vehicular assault.  While under the influence of drugs, and without an operator's permit, Watkins drove his vehicle down a steep hill even though he knew that the vehicle's brakes were damaged.  He sped through a stop sign and struck a vehicle being driven by Kathy Embry, killing her passenger, her grandson Jaylind Raven, and seriously injuring Embry and Watkins' passenger Lonnie Lane.

## I.  The Crash on Sutter Avenue

{¶2}    In April 2011, the brakes on Watkins' 1993 Ford Explorer sport utility vehicle did not function fully.  Only one of the vehicle's four brakes was operational.  A driver would have only minimal stopping power when applying the Explorer's brakes.  Just days before the fatal accident, Watkins had struck a parked car in Mt. Adams.  He had stopped to fix a tire flattened in the accident.  Watkins told an investigating Cincinnati police officer that his brakes did not work.  He was issued a citation.  Yet Watkins continued to drive the vehicle.  He did not possess a valid operator's permit.

{¶3}    On the morning of the fatal accident, Watkins had been on a "drug binge." At his girlfriend's urging, Watkins picked up Lane and the two went in search of more drugs.  Watkins, driving the damaged Explorer, turned his vehicle eastbound onto Sutter Avenue, which runs downhill.  As the vehicle travelled down Sutter, Watkins was unable to slow the vehicle.  He ultimately shifted into reverse gear in a futile attempt to stop the vehicle.

{¶4}    Watkins ran a stop sign and crashed into Embry's vehicle.  The 14-year-old Raven was killed upon impact.  Embry suffered serious injuries including a lacerated liver, intracranial bleeding, a spinal fracture, eye damage, and an injury to her facial nerves.    Her injuries required extensive treatment including several weeks of

hospitalization. Watkins' passenger Lane suffered a laceration on his forehead, broken bones, and a closed-brain injury. Watkins admitted to investigating officers at the scene that he had used drugs the day before the accident. A sample of his blood tested positive for cocaine, cocaine metabolites, and opiates.

## II. Multiple Sentences Imposed

{¶5} Watkins entered pleas of no contest to the three charges. The trial court accepted his pleas, found him guilty of each offense, and continued the matter for sentencing.

{¶6} After reviewing the presentence investigation, the victims' statements, Watkins' sentencing memorandum and statement of remorse, and the arguments of counsel, the trial court imposed a nine-year prison term for the aggravated-vehicular homicide of Raven, a six-year term for the aggravated-vehicular assault of Embry, and a six-year term for the aggravated-vehicular assault of Lane. The court ordered the sentence for the aggravated-vehicular-homicide offense to be served consecutively to the prison term for the aggravated-vehicular assault of Embry. The sentence for the second aggravated-vehicular-assault offense was to be served concurrently with the other two prison terms. The aggregate prison term was 15 years' incarceration. The trial court also suspended Watkins' driver's license for the rest of his life.

## III. A Dissimilar Import for Each Person Affected by the Conduct

{¶7} In his first assignment of error, Watkins argues that the trial court erred in imposing multiple sentences for the aggravated-vehicular-homicide and aggravated-vehicular-assault convictions as they were allied offenses of similar import. Watkins argues that after the Ohio Supreme Court's 2010 decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the "focus of our inquiry is now on the conduct of the accused" as demonstrated by the evidence adduced below. *See id.* at ¶ 44. Because the state relied upon the same conduct to demonstrate all three offenses, Watkins

asserts that the three offenses were allied offenses and the trial court erred in not affording him the protections of Ohio's multiple-count statute, R.C. 2941.25. We disagree.

{¶8}    Watkins has preserved this matter for appellate review. He properly suggested to the trial court in his sentencing memorandum filed prior to sentencing that the imposition of multiple sentences was error. *See State v. Morgan*, 181 Ohio App.3d 747, 2009-Ohio-1370, 910 N.E.2d 1075, ¶ 14 (1st Dist.).

{¶9}    Under R.C. 2953.08(G)(2), an appellate court may vacate a sentence and remand for a new sentencing hearing if the sentence is contrary to law. A sentence that contains an allied-offense error is contrary to law. *See State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 26; *see also State v. Wilson*, 129 Ohio St.3d 214, 2011-Ohio-2669, 951 N.E.2d 381, ¶ 14; R.C. 2953.08(A)(4). Thus we may only modify or vacate Watkins' multiple sentences if we "clearly and convincingly find" that the trial court failed to adhere to all applicable rules and statutes in imposing the multiple sentences. *See* R.C. 2953.08(G)(2); *see also State v. White*, 1st Dist. Hamilton No. C-130114, 2013-Ohio-____, (Sept. 27, 2013); *State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 9. We review the decision to deny Watkins the protections of the multiple-count statute without deference to the trial court's ruling. *See State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶10}    While Watkins correctly notes the renewed focus on the accused's conduct in our allied-offenses analysis, he ignores the underlying purpose of that analysis. The touchstone of our analysis, both before and after *Johnson*, has remained legislative intent: Did the General Assembly intend multiple punishments for these offenses? *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 46 (explaining that in deciding whether to afford a defendant the protections of the multiple-count statute, "the intent of the General Assembly is controlling"); *see State v. Rance*, 85 Ohio St.3d 632, 635, 710 N.E.2d 699 (1999) (holding that a defendant may be punished for multiple offenses

4

arising from a single criminal act, so long as the General Assembly intended cumulative punishment).

{¶11} Courts determine the General Assembly's intent to provide or to restrict multiple punishments for a single course of conduct by applying R.C. 2941.25. *See State v. Anderson*, 2012-Ohio-3347, 974 N.E.2d 1236, ¶ 19 (1st Dist.), citing *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at syllabus. Subsection (B) of R.C. 2941.25 provides the following:

> Where the defendant's conduct constitutes two or more offenses of *dissimilar import*, * * * the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

(Emphasis added.) *See Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 51.

{¶12} In 1985, the Ohio Supreme Court identified the General Assembly's intention to provide for multiple punishments in cases like this one where the offense is defined in terms of conduct towards "another," and the offender has committed a single act resulting in multiple victims. In *State v. Jones,* 18 Ohio St.3d 116, 480 N.E.2d 408 (1985), the Ohio Supreme Court held that multiple convictions for aggravated-vehicular homicide, in violation of R.C. 2903.06, can arise from a single instance of a person's reckless operation of his vehicle. The Supreme Court first examined the text of the vehicular-homicide statute that prohibited recklessly causing the death "of another." *Id.* at 118. Holding that the statute, by being framed in terms of an offender's conduct towards another, authorized a conviction for each person killed by a reckless driver, the Supreme Court concluded that the killing of the two passengers in the defendant's vehicle as a result of the defendant's reckless operation of the vehicle constituted two offenses of dissimilar import. The conduct of recklessly causing the death of two persons with the defendant's

5

automobile represented "two offenses of dissimilar import—the 'import' under R.C. 2903.06 being each person killed." *Id.*

{¶13} It is well-settled in this district's decisions applying *Jones*, that when an offense is defined in terms of conduct towards "another," then there is a dissimilar import for each person affected by that conduct. *See State v. Ellison*, 1st Dist. Hamilton No. C-050553, 2006-Ohio-2620, ¶ 26-27; *see also State v. Wright*, 1st Dist. Hamilton No. C-080437, 2009-Ohio-5474, ¶ 62.

{¶14} Nothing in *Johnson* alters this conclusion. *See State v. Young*, 2d Dist. Montgomery No. 23642, 2011-Ohio-747, ¶ 39; *see also State v. Riley*, 4th Dist. Athens No. 11CA14, 2012-Ohio-1086; *State v. Tapscott*, 2012-Ohio-4213, 978 N.E.2d 210 (7th Dist.); *State v. Logan*, 8th Dist. Cuyahoga No. 97022, 2012-Ohio-1944, ¶ 53; *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 37; *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 79-80. Under the *Johnson* analysis, we examine "the statutory elements of each offense in the context of the defendant's conduct." *Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, at ¶ 20; *see State v. Lavender*, 1st Dist. Hamilton No. C-120508, 2013-Ohio-2508, ¶ 4.

{¶15} Here, Watkins was convicted of aggravated-vehicular homicide, defined as causing "the death of another" as the proximate result of operating a motor vehicle while impaired by a drug of abuse. R.C. 2903.06(A)(1)(a). He was also convicted of aggravated-vehicular assault, in violation of 2903.08(A)(1), which proscribes a person impaired by a drug of abuse from operating a motor vehicle and causing serious physical harm "to another person."

{¶16} Where, as here, an offense is defined in terms of conduct towards "another," there is a dissimilar import for each person affected by the conduct. Although Watkins may only have driven his vehicle into a single collision on Sutter Avenue, that conduct resulted in the death of another and in serious physical harm to two others. While the state proceeded against Watkins for offenses arising from a single course of

conduct, each offense involved a separate victim—the aggravated-vehicular homicide of Raven and the aggravated-vehicular assaults of Embry and Lane. Thus there was a dissimilar import for each person affected by Watkins' conduct. Accordingly, multiple convictions were permitted under R.C. 2941.25.

{¶17} We note that although the trial court did not complete and journalize a sentencing-findings worksheet, the transcript of the sentencing proceedings reflects that the trial court engaged in the statutorily mandated three-step analysis and made the findings required for imposing consecutive sentences under R.C. 2929.14(C). *See* R.C. 2953.08(G)(1); *see also Alexander*, 2012-Ohio-3349, at ¶ 16. The first assignment of error is overruled.

### IV. The Seriousness and Recidivism Factors Are Supported By the Record

{¶18} In his second assignment of error, Watkins argues that his sentences are contrary to law because the imposed sentences were not supported by "findings in the record." He alleges that the trial court failed to apply or consider the seriousness and recidivism factors of R.C. 2929.12, and the proportionality goal of R.C. 2929.11(B).

{¶19} Watkins first asserts that the trial court erred in imposing sentences not supported by the R.C. 2929.12 seriousness and recidivism factors. Again, we disagree.

{¶20} R.C. 2929.12 states that in determining the most effective way to comply with the purposes and principles of felony sentencing, the trial court shall "consider" the factors relating to the seriousness of the offender's conduct and the factors relating to the likelihood of the offender's recidivism. Along with R.C. 2929.11, which lists the purposes and principles of felony sentencing, R.C. 2929.12 serves as an overarching guide for trial judges to consider in fashioning an appropriate sentence. *See Alexander*, 2012-Ohio-3349, at ¶ 23.

{¶21} It is clear from the record and the trial court's remarks at the sentencing hearing that the court considered a number of factors relating to the seriousness of

Watkins' conduct and to the likelihood of his offending in the future before imposing sentence. Watkins had operated a mechanically defective vehicle while, by his own admission, on "a pretty strong drug binge," and without a current operator's permit. He recklessly struck another vehicle and killed an innocent motorist and seriously injured two others. *See* R.C. 2929.12(B)(2). The court acknowledged Watkins' discouraging record of juvenile adjudications, prior adult misdemeanor convictions for traffic, drug, and assault offenses, and his failed attempts at rehabilitation. *See* R.C. 2929.12(D)(2)-(D)(4). The court also acknowledged Watkins' genuine remorse for his actions—a factor indicating that Watkins is less likely to reoffend. *See* R.C. 2929.12(E)(5). Each of these factors is amply supported in the record.

{¶22} We, therefore, conclude that the trial court adhered to the statutory requirements of R.C. 2929.11 and 2929.12 in imposing sentence. We do not clearly and convincingly find that the trial court erred in weighing these statutory factors to fashion appropriate sentences. *See* R.C. 2953.08(G)(2)(b).

### V. The Sentences Are Consistent With Local Judicial Practice

{¶23} Finally, Watkins challenges the proportionality of his sentences. In his sentencing memorandum, filed with the trial court, and in his appellate brief, Watkins provided one-paragraph synopses of eight other cases of aggravated-vehicular homicide or aggravated-vehicular assault decided in Hamilton County. The sentences imposed in those cases ranged from one year to eight years in length. In light of those sentences, Watkins argues that the 15-year aggregate sentence imposed upon him violated the proportional-sentencing goal of Ohio's felony-sentencing scheme.

{¶24} R.C. 2929.11(B) provides that a felony sentence must be "consistent with sentences imposed for similar crimes committed by similar offenders." But as this court held in 2003, "[c]onsistency * * * does not necessarily mean uniformity. * * * Accordingly, consistency accepts divergence within a range of sentences and takes into consideration

8

the trial court's discretion to weigh relevant statutory factors." *State v. Ryan*, 1st Dist. Hamilton No. C-020283, 2003-Ohio-1188. ¶ 10, citing Griffin and Katz, *Sentencing Consistency: Basic Principles Instead of Numerical Grids: The Ohio Plan*, 53 Case W.Res.L.Rev. 1 (2002).

{¶25}   A trial court is not required to make express findings that the imposed sentences are consistent with other similarly situated offenders. *See State v. Marshall*, 8th Dist. Cuyahoga No. 89551, 2008-Ohio-1632, ¶ 20. A reviewing court "is to examine the available data not to determine if the trial court has imposed a sentence that is in lockstep with others, but whether the sentence is so unusual as to be outside the mainstream of local judicial practice." *Ryan* at ¶ 10. While offenses may be similar, distinguishing factors may justify dissimilar treatment. *See id.* at ¶ 12.

{¶26}   We have reviewed the entire record in this case, including the transcript of the sentencing hearing. It is clear that the trial court properly considered the most effective means of complying with the principles and purposes of sentencing. Each sentence imposed was within the statutory range provided by law. *See* R.C. 2929.14(A). In light of the seriousness of Watkins' actions in driving a mechanically defective vehicle while impaired by drugs and without an operator's permit, we cannot say that a nine-year sentence for aggravated-vehicular homicide and six-year prison terms for aggravated-vehicular assault are so unusual as to be outside the mainstream of local judicial practice.

{¶27}   Therefore, we do not clearly and convincingly find that the sentences imposed were contrary to law. *See* R.C. 2953.08(G)(2)(b). The second assignment of error is overruled.

{¶28}   Therefore, the trial court's judgment is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.